Robert HENDRICKSON, Plaintiff,

v.

AMAZON.COM, INC., et al., Defendants.

No. CV 02–08443 TJH.

United States District Court, C.D. California, Western Division.

Dec. 8, 2003.

Robert Hendrickson, Woodland Hills, CA, for plaintiff.

Allan E. Anderson, Timothy L. Skelton, Ropers, Majeski Kohn & Bentley, Los Angeles, CA, for defendants.

## Memorandum Opinion

HATTER, District Judge.

Robert Hendrickson ("Hendrickson") owns the copyright to the movie *Manson*, which he has not released, or authorized to be released, in a digital video disc ("DVD") format. Thus, all copies of *Manson* sold in a DVD format infringe upon Hendrickson's copyright. 17 U.S.C. § 106(3).

On January 28, 2002, Hendrickson sent a letter to Amazon.com, Inc. ("Amazon"), notifying it that all copies of *Manson* on DVD infringe his copyright. On October 21, 2002, Hendrickson noticed that a *Manson* DVD was recently posted for sale by Demetrious Papaioannou ("Papaioannou") on Amazon's website. Two days later, Hendrickson purchased a copy of the DVD from Papaioannou, using Amazon's website credit services to facilitate the transaction.

Hendrickson, then, filed this action against Amazon and Papaioannou. He asserts claims for direct copyright infringement against Amazon and Papaioannou, as well as a vicarious copyright infringement claim against Amazon. Amazon moved for summary judgment, asserting that it is not liable for direct copyright infringement, and that it is protected against vicarious infringement by the safe harbor provision of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512.

The party moving for summary judgment has the initial burden of establishing that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). However, if the opponent has the burden of proof at trial, the moving party does not have the burden to produce any evidence showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Instead, ... the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case." Consequently, on the direct copyright claim, Amazon need only show that there is no evidence supporting Hendrickson's allegation that it sold the *Manson* DVD.

Alternatively, if the moving party has the burden of proof at trial, that party "must establish ... all of the essential elements of the claim or defense to warrant judgment in [its] favor." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 274. Therefore, because Amazon is asserting an affirmative defense on the vicarious liability claim, it must establish all elements of the safe harbor rule under the DMCA.

█ Hendrickson's contention, that Amazon actually committed the infringing activity by "selling" the *Manson* DVD, is based on "sales" documents, and an email that was generated by Amazon subsequent to the purchase. These "sales" documents are the Amazon website pages used by the seller and buyer to complete the purchase. The email was an automatic notice sent to the seller after the purchase had been made notifying the seller that Amazon had charged the buyer's account and that the seller's account would be credited. Hendrickson has no viable evidence establishing that Amazon was not merely an internet service provider ["ISP"], but rather was the direct seller of the infringing item. An ISP is "a provider of online services or network access, or the operator of facilities therefor ...." 17 U.S.C. § 512(k)(1)(B). Amazon meets the DMCA's definition of an ISP. Indeed, all of the evidence points to the fact that Papaioannou, not Amazon, was the actual seller. Thus, summary judgment in favor of Amazon on Hendrickson's direct infringement claim against Amazon is appropriate.

█ However, because Hendrickson did buy a *Manson* DVD from the Amazon website, the Court will assume, for purposes of this motion, that Papaioannou committed direct copyright infringement. By showing that there was direct copyright infringement by an independent third party seller, vicarious liability may be transferred to the party that provided the forum and facilitated the sale. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d

259 (9th Cir.1996). In *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir.2001), the Ninth Circuit extended its holding in *Fonovisa* to the internet.

█ Because Amazon qualifies as an ISP under the DMCA, it is entitled to the safe harbor affirmative defense against a claim of vicarious copyright infringement if it establishes the following three elements:

A. It does not have actual knowledge that the material ... on the system or network is infringing;

(ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

B. It does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right, and ability to control such activity; and

C. Upon notification of claimed infringement ... [it] responds expeditiously to remove, or disable access to, the material ....

17 U.S.C. § 512(c).

Hendrickson's January 28, 2002, letter to Amazon notified Amazon that all *Manson* DVDs were unauthorized by the copyright owner and that any sales of such DVDs conducted via the Amazon website would be infringing activity in violation of his exclusive right to distribute pursuant to 17 U.S.C. § 106(3). Amazon asserts that the letter neither substantially complied with the identification requirements of the DMCA, nor was it consistent with the intent of the DMCA, which is to facilitate robust development of the internet. The DMCA places the burden on the copyright owner to monitor the internet for potentially infringing sales. "[A] service provider need not monitor its service or affirmatively seek facts indicating infringing activity ...." House Report No. 551(II), 105th Congress, 2nd Session 1998, H.R. at 53. To allow a plaintiff to shift its burden to the service provider would be contrary to the balance crafted by Congress. "The goal of § 512(c)(3)(A)(iii) is to provide the service provider with adequate information to find and examine the allegedly infringing material expeditiously." H.R. at 55.

This Court previously granted summary judgment in favor of Hendrickson, in a previous action, *Hendrickson v. Amazon.com, Inc.*, CV 02–07394 TJH (C.D.Cal. 2003), by deciding that his January, 2002, letter substantially complied with the DMCA requirements as to eight named defendants. To determine the adequacy of Hendrickson's notice, this Court considered the analysis by Judge Kelleher, in *Hendrickson v. Ebay, Inc.*, 165 F.Supp.2d. 1082 (C.D.Cal.2001) ("*Ebay*"), in which that court recognized that:

"[T]here may be instances where a copyright holder need not provide [the ISP] with specific item numbers to satisfy the identification requirement. For example, if a movie studio advised [the ISP] that all listings offering to sell a new movie that has not yet been released in ... DVD format are unlawful, [the ISP] could easily search its website using the title ... and identify the offensive listings."

*Ebay*, 165 F.Supp.2d at 1090.

However, because the DMCA is relatively new, the question as to how long an adequate notice should remain viable is still unanswered. "[T]he Committee [did] not intend [to] suggest that a provider must ... monitor its service ...." H.R. at 61. The Committee, also, implied that both the copyright owner and the ISP

should cooperate with each other to detect and deal with copyright infringement that take place in the digital networked environment. H.R. at 44. Thus, it was not the intention of Congress that a copyright owner could write one blanket notice to all service providers alerting them of infringing material, thus, relieving him of any further responsibility and, thereby, placing the onus forever on the ISP. However, it is, also, against the spirit of the DMCA if the entire responsibility lies with the copyright owner to forever police websites in search of possible infringers.

In evaluating the balance crafted by Congress, courts traditionally employ a strong presumption that the plain language of a statute expresses congressional intent. *Ardestani v. INS,* 502 U.S. 129, 135–37, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991). The Ninth Circuit has consistently refused to defer to interpretations that conflict with plain statutory language. *Almero v. INS,* 18 F.3d 757 (9th Cir.1994). "If the term at issue has a settled meaning, we must infer that the legislature meant to incorporate the established meaning unless the statute dictates otherwise." *S & M Investment v. Tahoe Regional Planning Agency,* 911 F.2d 324, 327 (9th Cir.1990). The actual language of the DMCA is present tense. The service provider must have knowledge that the actual material "is infringing". Alternatively, it must be aware that infringing activity "is apparent". "The term activity is intended to mean activity *using* the material *on the system* or network. The Committee intends such activity to refer to wrongful activity that *is occurring on the site* ...." H.R. at 53 (emphasis added). Because the language of the statute is present tense, it clearly indicates that Congress intended for the notice to make the service provider aware of the infringing activity that is occurring at the time it receives the notice.

In interpreting a similar section of the DMCA, Congress states "[O]n line editors and catalogers would not be required to make discriminating judgments about *potential* copyright infringements." H.R. at 58. Although, the interpretation is referring to the reason for requiring the copyright owner to offer adequate notice, this interpretation must be read in conjunction with the plain language of the statute in addition to the intent of Congress that service providers not have to monitor their websites indefinitely.

Moreover, the purpose behind the notice is to provide the ISP with adequate information to find and examine the allegedly infringing material expeditiously. H.R. at 55. If the infringing material *is on* the website *at the time* the ISP receives the notice, then the information, that all *Manson* DVD's are infringing, can be adequate to find the infringing material expeditiously. However, if at the time the notice is received, the infringing material is not posted, the notice does not enable the service provider to locate infringing material that is not there, let alone do it expeditiously.

Recognizing that Congress tried to craft a balance between the responsibilities of the copyright owner and the ISP, there is a limit to the viability of an otherwise adequate notice. Hedrickson's January, 2002, letter, claiming all *Manson* DVDs violate his copyright, although adequate for the listings then on Amazon, cannot be deemed adequate notice for subsequent listings and sales, especially, as here, when the infringing item was posted for sale nine months after the date of the notice.

Under the DMCA, a notification from a copyright owner that fails to comply substantially with § 512(c)(3) "shall not be considered under [the first prong of the safe harbor test] in determining whether a service provider has actual knowledge or is

aware of the facts or circumstances from which infringing activity is apparent." 17 U.S.C. § 512(c)(3)(B)(i) & (ii). Thus, the first prong is satisfied.

To satisfy the second prong of the test, Amazon must show that it "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B). Amazon does receive a financial benefit from its third party sellers, so its only defense is to prove that it does not have the right and ability to control such activity.

 Here, the infringing activity is the sale of the unauthorized work, not the posting of the listing. 17 U.S.C. § 106(3). There is no evidence to suggest that Amazon had the ability to know that an infringing sale by a third party seller would occur. Amazon's evidence established that it never possessed the DVD, and never had the opportunity to inspect the item. Amazon merely provided the forum for an independent third party seller to list and sell his merchandise. Amazon was not actively involved in the listing, bidding, sale or delivery of the DVD. The fact that Amazon generated automatic email responses when the DVD was listed and again when it was sold, does not mean that Amazon was actively involved in the sale. Once a third party seller decides to list an item, the responsibility is on the seller to consummate the sale. While Amazon does provide transaction processing for credit card purchases, that additional service does not give Amazon control over the sale. In sum, Amazon's evidence shows that it did not have control of the sale of DVD.

As discussed above, Amazon could not respond to the notice of claimed infringement and remove, or disable access to, the material since the notice was no longer

viable. Thus, the third prong of the save harbor provision is not applicable.

Thus, Amazon has proven that it qualifies for the safe harbor affirmative defense of the DMCA. Consequently, to avoid summary judgment, the burden shifts to Hendrickson to introduce evidence which creates a triable issue of fact. *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1340 (9th Cir.1987). Hendrickson has offered no such evidence. Thus, summary judgment in favor of Amazon is appropriate.

Therefore, Amazon's motion for summary judgment be, and hereby is, Granted.